

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4750 | **DATE** | 8/11/2003 |
| **CASE TITLE** | Holly Marine vs. Baker Heavy & Highway, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Holly's motion for summary judgment (105-1). Judgment is entered in the amount of $10,900 in favor of Holly Marine Towing, Inc. and against Baker Heavy and Highway, Inc. This case is terminated. Holly is directed to file a properly-supported fee petition on or before 9/8/03. No reply brief will be permitted. The Court waives compliance with the procedures set forth in Local Rule 54.3 (d)-(g).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 12 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 134 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  03 AUG 12 AM 8:21  Date/time received in central Clerk's Office  FILED  8-12-03 | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Complaint of HOLLY MARINE TOWING INC., Owner of the Barge HMT 7, For Exoneration from or Limitation of Liability, | ) ) ) ) ) ) |
| HOLLY MARINE TOWING, INC., | ) ) |
| Counter-Plaintiff, | ) ) |
| vs. | ) Case No. 00 C 4750 ) |
| BAKER HEAVY & HIGHWAY, INC., | ) ) ) ) |
| Counter-Defendants. | ) |

DOCKETED
AUG 1 2 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On September 17, 1999, Holly Marine Towing, Inc. chartered one of its barges, the HMT 7, to Baker Heavy & Highway Inc. pursuant to a written charter agreement. On September 24, an accident took place on the barge. The HMT 7 was moored in the Chicago Sanitary and Ship Canal under the Interstate 55 highway overpass, where Baker had positioned it to assist in a construction project. A mechanical platform lift owned by Baker fell off the barge into the canal. Lonny Staal and John Gindl, two workers employed by Baker were injured; Gindl died from his injuries. Gindl's estate and Staal each filed suit in state court against Baker and Holly. In response, Holly filed a complaint in this Court pursuant to the Limitation of Liability Act, 46 U.S.C. app. §§ 181-196, seeking exoneration from or limitation of its liability.

By filing its petition for limitation of liability, Holly invoked a procedure provided by the

Act under which a shipowner may seek to limit its liability for damages arising from a maritime accident to the value of the vessel and its freight. *See* 46 U.S.C. §§ 183(a), 185; *In the Matter of the Complaint of Holly Marine Towing, Inc.*, No. 00 C 4750, 2003 WL 21384639 at *1-4 (examining history and purpose of Limitation of Liability Act and its application to this case). Holly was required to deposit with the court $10,900, a sum equal to the value of its interest in the barge. In turn, the Court enjoined the prosecution of Staal and Gindl's pending state court actions and directed all persons with claims against Holly arising from the accident to file them here. As a result, Staal and Gindl filed claims against Holly in this Court, and Holly filed a counterclaim against Baker, seeking indemnity pursuant to the terms of their charter agreement.

On June 16, 2003, this Court entered an order approving a settlement agreement between Holly and Staal and Gindl. Pursuant to the order, Staal and Gindl's claims against Holly were extinguished, the injunction was dissolved, and the parties were released to pursue other claims related to the accident in state court. *Id.* at *6. Only Holly's counterclaim against Baker remains, and it is before the Court now on Holly's motion for summary judgment.

### Discussion

Holly has moved for summary judgment, seeking indemnity from Baker pursuant to the terms of the parties' charter agreement. It seeks to recover from Baker the entire amount that it paid Gindl and Staal in settlement, plus the attorney's fees it incurred in defending against their claims. The parties agree that the charter agreement is a maritime contract and that the indemnity provision at issue is enforceable under admiralty law. To show that it is entitled to indemnity, Holly must establish that (1) the indemnity clause covered the claims it settled with Gindl and Staal, (2) the settlement was reasonable, and (3) it settled under a reasonable apprehension of

liability. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1216-17 (5th Cir. 1986). To succeed on its motion for summary judgment, Holly must show that there is no genuine issue of material fact and that it is entitled to judgment on its indemnity claim as a matter of law. Fed. R. Civ. P. 56(c).

A. Claims "arising out of unseaworthiness"

The indemnity clause in the parties' charter agreement provides:

> Charterer will indemnify and protect Owner from or against any claim asserted by Charterer or any person allegedly arising out of unseaworthiness of the vessel(s) ... at the time of delivery to and acceptance by Charterer and during the period of hire.

Pl's Ex. 8 (Charter Agreement), ¶ 2. Accordingly, Baker is required to indemnify Holly from "any claim ... allegedly arising out of unseaworthiness" of the barge. The parties, however, disagree about the scope of the claims covered by that language. Holly insists that its settlement is covered because the claims that Staal and Gindl alleged were based on allegations of unseaworthiness. Baker counters that the settlement should be excluded because Staal and Gindl never asserted a *cause of action* against Holly for unseaworthiness.

The usual rules of contractual interpretation determine the availability of contractual indemnity under maritime law. *Hardy v. Gulf Oil Co.*, 949 F.2d 826, 834 (5th Cir. 1992). "'A maritime contract containing an indemnity agreement ... should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'" *Id.* (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984)). The indemnity agreement "should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). Applying these principles, we interpret the disputed language here in accordance

3

with its normal usage, and in the broader context of the parties' charter agreement.

"Unseaworthiness" is a term of art. It is used to describe an admiralty law doctrine that imposes upon shipowners "a non-delegable duty 'to furnish a vessel and appurtenances reasonably fit for their intended use.'" *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 (1996) (quoting *Michigan v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)). Under federal maritime law, an injured seaman is entitled to bring an action for "unseaworthiness" which allows him to recover for a shipowner's failure to supply a safe ship "'irrespective of fault and irrespective of the intervening negligence of crew members.'" *Id.* (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 25 (1990)). The shipowner's duty to provide a seaworthy vessel extends beyond a duty to provide a ship that floats or one that is capable of withstanding winds and storms. Unseaworthiness exists if a ship is insufficiently or defectively equipped, and a shipowner is strictly liable under the doctrine for unreasonably unsafe work conditions prevailing aboard his vessel. *See, e.g., Illinois Constructors Corp. v. Logan Transportation Inc.*, 715 F. Supp. 872, 884 (N.D. Ill. 1989) (where ship's intended purpose was to tow barges up and down western rivers, issue of unseaworthiness concerned whether ship was "adequately designed, constructed, maintained, and equipped" for that purpose); *Dunlap v. G&C Towing Inc.*, 613 F.2d 493, 496 (4th Cir. 1980) (jury could find unseaworthiness where oil or grease creates a condition of slipperiness such that a ship's deck or stairway is no longer reasonably fit for its intended use by the crew); *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1318, 1321 (2nd Cir. 1973) (same).

In their original state court actions, Gindl and Staal asserted claims against Holly entitled "negligence," "strict liability in tort," and "breach of implied warranty." *See* Def.'s Ex. L (Staal's Complaint), Counts 4-6; Def's Ex. M (Gindl's Complaint), Counts 4-6. The allegations in support of each claim varied slightly, but each asserted that Holly failed to make the ship safe

for the kind of construction work that Baker planned to carry out from its deck. Specfically, Staal and Gindl alleged that the barge was furnished to Baker without guard rails along its borders, rendering the ship unfit for the operation of mobile machinery that might fall overboard. *See* Staal's Complaint, Count 4 ("said barge was defective and unreasonably dangerous" in that it was "designed, manufactured and/or distributed with defects ... so that persons and machinery had a propensity to fall off the barge"), Count 5 (Holly "knew or should have known that the barge it lent and/or provided to plaintiff's employer was going to be used for construction purposes," that "persons and machinery would be placed upon the subject barge," and that "machinery and/or persons on the subject barge has a propensity to fall off the barge"), Count 6 (Holly breached its implied warranty of merchantability in that "the barge was not fit for the ordinary purpose for which it was used"). Thus in each of their claims against Holly, Staal and Gindl alleged that Holly breached a duty to provide a barge fit for its intended purpose.

We agree with Holly that these are the types of claims that "reasonably appear to have been within the contemplation of the parties" when they entered into the contract. *Corbitt*, 654 F.2d at 333. The indemnity clause states that Baker will indemnify and protect Holly from "any claim ... allegedly arising out of unseaworthiness of the vessel." Reading the term "unseaworthiness" in accordance with its ordinary legal definition, the indemnity clause requires Baker to indemnify Holly from claims arising from allegations that the barge was unfit for its intended service. This interpretation is consistent with other language in the parties' charter agreement that serves to limit Holly's liability for the condition of the barge. For example, the contract states that Baker agrees to accept the barge "on an as is, where-is basis." *See* Charter Agreement, ¶ 2. And though it grants Baker the right to inspect the barge prior to delivery, *Id.*, ¶ 6, it states that Baker agrees to accept the barge "without any warranties ... regardless of whether

5

or not the vessel is surveyed." *Id.*, ¶ 2. Taken together, these terms indicate that Baker agreed to insulate Holly generally from claims that the barge was unfit for the purposes for which Baker intended to use it.

We reject Baker's proposed interpretation of the indemnification clause to cover only claims *denominated* as being based on unseaworthiness. The disputed clause does not mention any particular cause of action. Rather, it states that Baker must indemnify Holly from "*any* claim ... arising out of" the ship's alleged unseaworthiness. *Id.* (emphasis added). Accepting Baker's interpretation would allow the application of the indemnity provision to be determined by the manner in which a third party happened to label its allegations. Staal and Gindl styled their claims against Holly as claims for negligence, breach of warranty and strict liability. But what they alleged amounted to a claim of unseaworthiness as that term is normally understood: that the barge lacked adequate perimeter railings, thus rendering it unsafe for its intended use, and that Holly had a duty to supply them. At least insofar as Staal and Gindl sought to hold Holly strictly liable for its alleged breach of duty (*see* Staal's Complaint, Counts 4 and 6), those claims are covered under the language of the contract.

The indemnification provision arguably does not cover Staal's and Gindl's claims for "negligence." "Unseaworthiness" is a strict liability concept, *see Yamaha*, 516 U.S. at 208, and thus it can be maintained that any claim "allegedly arising from unseaworthiness," properly labeled or not, would have to be based on a theory of strict liability. Under this construction, the settling plaintiffs' claims for negligence, in which they allege that Holly "knew or should have known" that the barge would be used for construction purposes, and that "machinery and persons had a propensity to fall off the barge," Staal's Complaint, Count 5, would be excluded from coverage. *See, e.g., In re Gulf and Midlands Barge Line, Inc.*, 509 F.2d 713 (5th Cir. 1975).

6

But this does not affect Baker's obligation to indemnify Holly for the entire amount of the settlement. It is true that the settlements between Holly and Gindl and Staal do not identify which claims motivated the decision to settle. But in the present summary judgment motion, Holly has demonstrated that it had no real risk of exposure on the negligence claim. In its motion, Holly argued that the evidence reflected that it was not negligent. *See* Holly SJ Mem. at 13. Baker has produced no evidence of Holly's negligence; indeed it did not dispute Holly's argument in its response and thus effectively has conceded the point. *See* Holly SJ Reply at 10-11. Under the circumstances, the settlements are properly understood as being based on the claims made against Holly which sought to impose liability without fault. As discussed earlier, those claims unquestionably arise from the barge's alleged unseaworthiness and thus are within the scope of the indemnification provision.

Baker has also declined to dispute either the reasonableness of Holly's perceived apprehension of liability, or the reasonableness of the settlement (which is essentially unassailable given that Holly paid only $10,900 to settle plaintiffs' claims, including Gindl's action for wrongful death). Accordingly, we find that Holly has established its entitlement to indemnity as a matter of law.

B.  Attorney's Fees

Holly also seeks to recover the attorney's fees it incurred both in defending against Staal and Gindl's action and in pursuing its entitlement to indemnity. Baker argues that there is no language in the indemnification agreement suggesting that it must reimburse Holly for its fees. But attorney's fees incurred in defending against liability claims are within the scope of an indemnity obligation imposed by contract. *Peter Fabrics Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2nd Cir. 1985) (citing *Paliaga v. Luckenbach Steamship Co.*, 301 F.2d 403, 409 (2nd Cir. 1962)).

7

Reimbursement for such fees is presumed unless the indemnification agreement expressly provides otherwise, *id.*, and in this case it does not do so. Holly is therefore entitled to collect the reasonable attorney's fees incurred in defending against plaintiffs' claims. It is barred, however, from recovering the fees associated with pursuing its indemnity claim against Baker. *See id.* (reasoning that supports indemnitee's entitlement to recover attorney's fees incurred in defending against covered claims does not apply to costs and fees associated with establishing entitlement to indemnity, because such expenses are not part of the claim indemnified against).

## Conclusion

For the reasons stated above, the Court grants Holly's motion for summary judgment [Docket # 105-1]. The clerk is directed to enter judgment in the amount of $10,900 in favor of Holly Marine Towing, Inc. and against Baker Heavy and Highway, Inc. This case is terminated. Holly is directed to file a properly-supported fee petition on or before September 8, 2003. No reply brief will be permitted. The Court waives compliance with the procedures set forth in Local Rule 54.3 (d)-(g).

MATTHEW F. KENNELLY
United States District Judge

Date: August 11, 2003